UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS ) | |
| OF NEW HAMPSHIRE, ) | |
| DOUGLAS MARINO, ) | |
| GARRETT MUSCATEL, and ) | |
| ADRIANA LOPERA ) | CIVIL ACTION FILE |
| ) | NO. 1:17-cv-00395-JL |
| ) | |
| v. ) | |
| ) | |
| WILLIAM M. GARDNER, in his official capacity ) | |
| as the New Hampshire Secretary of State, and ) | |
| GORDON MACDONALD, in his official capacity ) | |
| as the New Hampshire Attorney General ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION TO REMAND

## PRELIMINARY STATEMENT

Within hours of this case having been removed to this court, the plaintiffs summarily jettisoned more than half of their case -- five of nine of their claims. Each one of those claims alleged that Senate Bill 3 ("SB 3") violated a provision of the U.S. Constitution. This ploy only succeeds in demonstrating the extent to which the plaintiffs are willing to manipulate the process. It does not eliminate this court's jurisdiction. Federal law, including extensive U.S. Supreme Court doctrine, carefully defines the limits of a state's ability to regulate elections. SB 3 is well within those limits. The State has properly invoked this court's jurisdiction and is entitled to be heard in this forum. For the reasons set forth below, the court should deny the motion to remand.

## BACKGROUND

The plaintiffs brought this action challenging SB 3, a statute that makes nominal, incremental changes to the New Hampshire Voter Registration process. SB 3 was passed by the Legislature on June 8, 2017, enrolled on June 22, 2017, and was signed into law on July 10, 2017. It is presumed constitutional and will not be declared invalid except on inescapable grounds. *General Electric Co., Inc. v. Commissioner*, 154 N.H. 457, 466 (2006).

The plaintiffs initially filed their nine-count complaint in Hillsborough County Superior Court, Southern District on August 23, 2017. Five of those causes of action arose under the United States Constitution and 42 U.S.C. § 1983. The plaintiffs waited two months to do so. The delay was necessitated, they asserted during the September 1, 2017 telephonic hearing, by the complexities of the issue being briefed.

On Friday, August 25, 2017, the State was served with orders of notice. On that same day, just slightly more than 2 weeks before a special election that had been scheduled 2 ½

months earlier, the plaintiffs filed a motion for preliminary injunction.  Later that afternoon, the

plaintiffs provided the State with 56 pages of pleadings and 630 pages of exhibits.  Despite the

admitted complexity and many weeks the plaintiffs found necessary to brief this issue, plaintiffs

sought expedited consideration of their preliminary injunction because of an upcoming special

election.

Given the predominance of the federal constitutional claims raised in the complaint, on

Thursday, August 31, 2017, the State properly removed the case to federal court pursuant to 28

U.S.C. §§ 1331, 1367, 1441, and 1446.  The State informed the plaintiffs of the notice of

removal, and provided the documents later that day.

At 4:42 P.M., the following day, Friday, September 1, 2017, plaintiffs filed an emergency

motion to remand.  This was two hours after the plaintiffs amended their complaint to remove all

of the federal causes of action from the case in an attempt to manipulate the forum in which this

case is heard.

## ANALYSIS

When a plaintiff pleads federal claims, a defendant has a federal right to have those

claims heard in a federal forum.  *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2011)

("By enacting the removal statute, Congress granted a right to a federal forum to a limited class

of state-court defendants."); *see also Bergemann v. R.I. Dep't of Envtl. Mgmt.*, 665 F.3d 336, 342

(1st Cir. 2011).  Consequently, "[a]n amendment to a complaint *after removal* designed to

eliminate the federal claim will not defeat federal jurisdiction." *Ching v. Mitre Corp.*, 921 F.2d

11, 13 (1st Cir. 1990); *see, e.g.*, *Ortiz-Bonilla v. Federacion de Ajedrez de P.R., Inc.*, 734 F.3d

28, 36 (1st Cir. 2013) (affirming district court's decision to retain supplemental jurisdiction over

claims arising under Puerto Rico law and noting that "[t]he plaintiff is the master of the claim; he

3

or she may avoid federal jurisdiction by exclusive reliance on state law"); *Mass. v. V & M Mgmt., Inc.*, 929 F.2d 830, 834 (1st Cir. 1991) ("Once a case is properly removed, a district court has jurisdiction over the entire case, whether or not the basis for removal, i.e., the federal claim, thereafter remains.").

> The policy behind this rule is obvious. When a plaintiff chooses a state forum, yet also elects to press federal claims, he runs the risk of removal. A federal forum for federal claims is certainly a defendant's right. If a state forum is more important to the plaintiff than his federal claims, he should have to make that assessment before the case is jockeyed from state court to federal court and back to state court. The jockeying is a drain on the resources of the state judiciary, the federal judiciary and the parties involved; tactical manipulation [by the] plaintiff . . . cannot be condoned.

*Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 507 (5th Cir. 1985) (quoting *Austwick v. Board of Ed.*, 555 F. Supp. 840, 842 (N.D. Ill.1983), disapproved of by *In re Romulus Community Schools*, 729 F.2d 431, to the extent *Austwick* espoused "[a] flat ban against discretionary remands").

"The rule that a plaintiff cannot oust removal jurisdiction by voluntarily amending the complaint to drop all federal questions serves the salutary purpose of preventing the plaintiff from being able to destroy the jurisdictional choice that Congress intended to afford a defendant in the removal statute." *Boelens*, 759 F.2d at 507.  *Boelens* has been cited approvingly by the First Circuit in *Ching v. Mitre Corp.*, 921 F.2d at 13, and *Rodriguez v. Comas*, 888 F.2d 899, 904 n. 20 (1st Cir. 1989), for its conclusion that amending federal claims out of a complaint properly removed to federal court on original jurisdiction grounds does not divest the district court of subject matter jurisdiction over the action.

Moreover, it is not clear that federal question jurisdiction no longer remains in this case. Plaintiffs' state-law claims raise a disputed and substantial federal question; namely, whether the New Hampshire Supreme Court's decision to apply a bright-line intermediate scrutiny test in

*State v. Guare*, 167 N.H. 658, 665 (2015), is preempted by the test required under the United States Supreme Court's decisions in *Burdick v. Takushi*, 504 U.S. 428 (1992), and *Anderson v. Celebrezze*, 460 U.S. 780 (1983), which require courts to test the burden of restriction against the strength of the State's interest in the restriction on a nuanced, case-by-case basis.  *See Libertarian Party of N.H. v. Gardner*, 126 F. Supp. 3d 194, 206 (D.N.H. 2015) (Barbadoro, J.) (refusing to apply *Guare* to ballot-access case and explaining that "the Supreme Court has never designated any specific lesser level of scrutiny – whether rational basis, intermediate scrutiny, or any other standard of review – to analyze restrictions that do not impose severe burdens").

Under *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 US 308 (2005), the assertion of this defense will be an independent basis for federal court jurisdiction: "There is, however, another longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction, this Court having recognized for nearly 100 years that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." 545 U.S. at 312 (Souter, J.).   "The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  *Id.*

The plaintiffs appear to believe that *Guare*'s bright-line test is more protective than the federal test.  It is not.  The federal test requires a nuanced balancing of interests on a case-by-case basis that, in one case may favor the defendants over the plaintiffs, and, in another case, may favor the plaintiffs over the defendants.  *Guare*'s bright-line test eliminates a substantial amount of the protection that the *Anderson/Burdick* balancing test provides to both parties.  It does so by shoehorning a wide-range of various voting access cases into a specific level of

scrutiny in order to simplify the judicial task without performing the nuanced, case-by-case analysis *Burdick* and *Anderson* require. *See Libertarian Party of N.H.*, 126 F. Supp. 3d at 200 (explaining that the outcome of the *Anderson/Burdick* test "depends heavily on the challenged restriction's factual context"); *id.* at 206 ("And in *Crawford v. Marion County Election Board*, 553 U.S. 181 . . . (2008), a majority of the Court's members appeared to disavow the application of specific and discrete levels of scrutiny to non-severe restrictions."). It is therefore preempted by federal law in this field.

Reaching this important, disputed, and substantial federal question in this action will not disturb the balance between state and federal judicial responsibilities, provides an independent basis for federal court jurisdiction, and will instead ensure that this important question of federal law is entrusted to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues.

Nonetheless, even if federal question jurisdiction no longer exists, this Court still retains subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 and retains the discretion to exercise supplemental jurisdiction or remand the claims to state court. Several factors inform this inquiry. Factors to consider when determining whether to exercise supplemental jurisdiction over state law claims include: (1) the interests of fairness; (2) judicial economy; (3) convenience; and (4) comity. *Camelio v. American Fed'n*, 137 F.3d 666, 672 (1st Cir. 1998). Another factor to consider is whether "a plaintiff has attempted to manipulate the forum." *V & M Mgmt., Inc.*, 929 F.2d at 835-36. Application of these factors dictates that this case should remain in federal district court.

**Interests of Fairness**

The defendants removed this case from state court well within the 30-day removal deadline under 28 U.S.C. § 1446(b) because plaintiffs' nine count complaint contained five federal questions.  The defendants removed this case with ample time for the federal district court to hear it on a preliminary basis before the September 12, 2017 special election in Laconia and Belmont.  As a practical matter, the plaintiffs' forum-manipulation attempts are going to make it impossible for the State to be prepared to do anything on Wednesday, September 6, 2017, in state court except to request on an emergency basis that the case be structured for briefing and that one or more days be set aside for an evidentiary hearing.

By contrast, SB 3 has been signed into law since July 10, 2017.  The Secretary of State has already trained city and town clerks with respect to it.  The Attorney General is prepared to help administer SB 3 along with the Secretary of State's staff.  Moreover, there is absolutely no evidence that SB 3 is or will have the speculative, hypothetical effect of deterring individuals from appearing on September 12, 2017 at the special election to register and vote or at any election for that matter.

Moreover, all SB 3 does is require individuals who are registering to vote to produce some documentary evidence confirming their domicile addresses.  If registrants are unaware of whether they possess such documentation, they may register to vote by signing an affidavit under oath swearing that they are qualified to vote in New Hampshire on the understanding that the public officials may take action to confirm this by mail or otherwise, consistent with prior law.[1] They may then vote and cast a regular – as opposed to provisional – ballot like every other voter.

---

[1] Contrary to plaintiff's representation at the telephonic hearing, SB 3 does not eliminate the ability of individuals to register to vote by affidavit.

Consequently, by attempting to manipulate the forum in this case, the plaintiffs are delaying the resolution of this matter for no sound reason. Accordingly, the fairness prong of the analysis weighs in the State's favor.

### Judicial Economy

Judicial economy is not served by remand of this matter to state court at this juncture. Indeed, as the *Boelens* court recognized, jockeying from state court to federal court and back to state court is a drain on the resources of the state judiciary, the federal judiciary, and the parties involved. Consequently, there is nothing judicially economical about remanding this action to state court at this time.

### Convenience

There is also nothing convenient about remanding these cases back to state court at this time. At this juncture, the defendants will not be prepared to move forward with a hearing in state court on Wednesday, September 6, 2017, and a remand order will only further delay and complicate the case.

### Comity

The comity concerns in this case are slight. All of the jurisprudence that applies to the state law claims is based almost entirely on federal law. Moreover, as noted above, there is at least one disputed and substantial claim of federal law lying at the heart of this case, the resolution of which should take place in a federal forum. Accordingly, any comity concerns are not sufficient to outweigh the Court's retention of jurisdiction over these claims.

### Forum Manipulation

The plaintiffs have effectively gutted their complaint solely to manipulate the forum in which they would prefer to litigate. They admitted that it took them six to eight weeks to prepare

the pleadings and motions in this case.  They necessarily had substantial time to think about and weigh the risks and benefits associated with including federal claims in their complaint.  In other words, in choosing to file this action in state court and electing to press claims pursuant to 42 U.S.C. § 1983, "the Plaintiff[s] rolled the dice, running the risk of removal . . . , and 'crapped out'." *Greenwald v. Palm Beach County*, 796 F. Supp. 1506, 1507 (S.D. Fla. 1992).  Plaintiffs' forum manipulation concerns simply do not outweigh all of the other fairness, economy, convenience, and comity factors that counsel retaining jurisdiction over the state law claims in this case.

### Plaintiffs' Arguments

"By removing this action to federal district court, the State has voluntarily waived its sovereign immunity under the Eleventh Amendment as to the entry of the declaratory and injunctive relief the plaintiffs seek. *See, e.g.*, *Consejo De Salud De La Comunidad De La Playa De Ponce, Inc. v. González-Feliciano*, 695 F.3d 83, 104 (1st Cir. 2012).  Thus, the plaintiffs' immunity concerns are unfounded."

The plaintiffs also argue that this case presents novel and complex issues of state law. Mem. of Law at 2.  In their memorandum of law in support of their motion for preliminary injunction, however, the plaintiffs rely heavily on either federal law or state law interpreting federal law.  *See generally* Exhibit C to Plaintiffs' Emergency Motion to Remand.  For example, the plaintiffs rely extensively on *Guare*.  In that case*,* the New Hampshire Supreme Court interpreted and applied the United States Supreme Court's ruling in *Burdick v. Takushi*, 504 U.S. 428  (1992) regarding what level of scrutiny should apply in a challenge to a state election law. *See* Exhibit C to Plaintiffs' Emergency Motion to Remand at 14 (citing *Guare* and noting the internal citation to *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)); *id.* at 40 (citing *Guare* and

noting the internal citation to *Ohio State Conference of N.A.A.C.P.*, 768 F.3d at 547[2]).  Further,

the remaining substantive legal citations in the memorandum of law are almost exclusively

federal court cases.  *See id.* at 13 (citing *League of Women Voters of N.C. v. N. Carolina*, 769

F.3d 224, 248 (4th Cir. 2014) and *Obama for Am. v. Husted*, 697 F.3d 423, 437 (6th Cir. 2012));

*id.* at 14 (citing *U.S. Student Ass'n Found. v. Land*, 546 F.3d 373, 388-89 (6th Cir. 2008)); *id.* at

39 (citing *Carrington v. Rash*, 380 U.S. 89, 94 (1965); *id.* at 45 (citing *McLaughlin v. N.C. Bd. of

Elections*, 65 F.3d 1215, 1228 (4th Cir. 1995)); *id.* at 43 (citing *Newburger v. Peterson,* 344 F.

Supp. 559 (D.N.H. 1972)).  In sum, the plaintiffs know and understand that federal law controls

almost entirely the outcome of this case.

Plaintiffs also argue that remand is required on an expedited basis in order to keep the

hearing originally scheduled for September 6, 2017 in state court.  The court should reject that

argument.  The removal pleadings were filed with the Hillsborough County Superior Court on

August 31.  Late on the afternoon of September 1, plaintiffs' counsel notified Clerk Marshall

Buttrick that an emergency motion to remand the case would be filed with this court on

September 1, and asked that the Clerk keep the September 6 hearing on the calendar.  State's

counsel informed Clerk Buttrick that the State would be objecting to the remand request.  State's

counsel further informed Clerk Buttrick that one and one-half hours, which was the amount of

time allotted for the September 6th hearing, would not be adequate for testimony and evidence

that would be needed to make an adequate record for this case.  There was no response from

Clerk Buttrick on September 1.  Moreover, as a result of plaintiffs efforts to forum shop, the

State has not been able to turn its attention to preparing for a preliminary injunction hearing on

---

[2] The Sixth Circuit vacated the *Ohio State Conference of N.A.A.C.P* opinion on which *Guare* relies after the United States Supreme Court stayed the effect of the preliminary injunction issued in that case. *See Ohio State Conf. of the NAACP v. Husted*, 588 Fed. Appx. 488 (6th Cir. 2014).

September 6, 2017, and requires sufficient time to brief the issues the plaintiffs have raised and prepare for a contested hearing.

In short, the State has no expectation that there will be a hearing on the merits on September 6th in the Superior Court.  In fact, despite this court's unavailability on September 5, it is more likely that this matter will move more expeditiously through this court with a hearing later during the week of September 4 or at some time during the week of September 11.

The upcoming special election does not necessitate an immediate hearing.

That special election is for Belknap County District 9 for a State representative's seat that covers Belmont and Laconia Wards 1 through 6.  While every election in New Hampshire is vitally important to the State and its citizens, certain elections are smaller in scope and can be managed more effectively than larger elections, such as a statewide general election.  The September 12 special election is such an election.

The Attorney General and Secretary of State will have staff from their offices in every polling place for the September 12th special election working with local election officials and voters to ensure that the modest modifications to the State's election laws under SB 3 can be effectively implemented.

Further, any change in voting procedures ordered so close to elections could have a negative impact on the perception of the electoral process with little time to dispel confusion or doubt, this Court should not feel compelled to act quickly on this matter without allowing for full consideration of these matters.  *See Greater Birmingham Ministries v. Alabama*, 161 F. Supp. 3d 1104, 1118 (N.D. Ala. 2016); *see also Purcell v. Gonzalez*, 549 U.S. 1, 5-6 (2006).

## STATUS OF FEDERAL CLAIMS

Accompanying the Petitioners' Amended Complaint was a Notice of Amendment of Complaint as a Matter of Course To Dismiss Without Prejudice Federal Law Claims Pursuant to Rule 15(a)(1), or in the Alternative, Notice of Dismissal of Federal Claims Pursuant to Rule 41(a)(1)(A)(i).  Given the concession by petitioners' counsel during the telephonic hearing that they would be barred by *res judicata* from pursuing their federal claims in the future, the Court should strike from that notice the letters "out" from the phrase "dismissal without prejudice" wherever that phrase is written; specifically in the caption and twice in the introductory paragraph.  In other words, any dismissal of the federal claims in this case should be *with prejudice*, not without prejudice.

## CONCLUSION

Accordingly, and for all of the above reasons, this Court should deny plaintiffs' emergency motion for remand and, in the event the court dismisses plaintiffs' federal claims, it should dismiss them with prejudice.

Respectfully submitted,

WILLIAM M. GARDNER, in his official capacity
as the New Hampshire Secretary of State

and

GORDON J. MACDONALD, in his official
capacity as the New Hampshire Attorney General

By their attorney,

GORDON J. MACDONALD
ATTORNEY GENERAL

Date:  September 2, 2017            /s/  Anthony J. Galdieri
                                   Anne M. Edwards, Bar No. 6826
                                   Associate Attorney General
                                   Anthony J. Galdieri, Bar No. 18594
                                   Attorney
                                   Department of Justice
                                   33 Capitol Street
                                   Concord, NH  03301-6397
                                   (603) 271-3650

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of September 2017, I electronically filed the
foregoing *Memorandum of Law In Opposition To Plaintiffs' Emergency Motion To Remand* with
the Clerk of the Court and all counsel of record using the CM/ECF System.

                                   /s/  Anthony J. Galdieri
                                   Anthony J. Galdieri