```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW HAMPSHIRE
```

League of Women Voters of
New Hampshire, et al.

    v.                              Civil No. 17-cv-395-JL
                                     Opinion No. 2017 DNH 174
New Hampshire Secretary of
State, et al.

NH Democratic Party

    v.                              Civil No. 17-cv-396-JL
                                     Opinion No. 2017 DNH 174
New Hampshire Secretary of
State, et al.

**ORDER**

    The New Hampshire Democratic Party and the League of Women Voters of New Hampshire, along with certain individual plaintiffs, brought separate actions in Hillsborough County Superior Court, challenging the constitutionality of the recently-enacted Senate Bill 3 ("SB 3").  Plaintiffs' original complaints, filed in that court, brought claims under both the New Hampshire and United States Constitutions.  Defendants removed both actions, citing this court's subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question).  See 28 U.S.C. § 1441.

    Plaintiffs amended both complaints to disavow any claims under the United States Constitution, electing to challenge SB 3

only under the New Hampshire Constitution,[1] and now move to remand both actions. The court grants both motions.

"[F]ederal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute . . . ." United States v. Coloian, 480 F.3d 47, 50 (1st Cir. 2007) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)). "When federal claims are dismissed before trial, state claims are normally dismissed as well." McInnis-Misenor v. Maine Med. Ctr., 319 F.3d 63, 74 (1st Cir. 2003). It is true, as defendants argue, that "[a]n amendment to a complaint after removal designed to eliminate the federal claim will not defeat federal jurisdiction." Ching v. Mitre

---

[1] To be clear, the court shared the defendants' concern that the plaintiffs might attempt to resurrect federal claims by raising arguments -- if not distinct claims -- under the U.S. Constitution on remand. Under direct questioning from the court during a late afternoon telephonic hearing on September 1, the League of Women Voters's counsel unequivocally disavowed any federal constitutional claims or arguments, going so far as to affirmatively recognize, also under direct judicial questioning, the possibility that federal constitutional claims could be barred under the doctrine of res judicata after a state court final judgment. The court assumes that the amendment by the New Hampshire Democratic Party carries the same import, and its counsel should immediately notify the court if that is not the case.

During the hearing, the Attorney General and his Assistants also requested an opportunity to brief their objections on an expedited basis. The court allowed that, and briefs were filed Sept. 2 and 3. Counsel are commended for their commitment and professionalism.

Corp., 921 F.2d 11, 13 (1st Cir. 1990). Because the court retains supplemental jurisdiction over the state claims, see 28 U.S.C. § 1367(a), it remains "discretionary with the district court whether to remand the state claims," Ching, 921 F.2d at 13.

"The district courts may decline to exercise supplemental jurisdiction over" such a state-law claim if:

> (1) the claim raises a novel or complex issue of State law;
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Most, if not all, of these factors point toward declining supplemental jurisdiction here. In the case cited by the defendants as listing such factors, Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998), Judge Barbadoro, sitting by designation on the Court of Appeals, wrote that "the balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation[,]" as is certainly the case here.

Most importantly, the plaintiffs have withdrawn the claims over which this court had original jurisdiction. See 28 U.S.C.

3

§ 1367(c)(3); see also supra n. 1.  Under such circumstances, "the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over state-law claims." Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995).  The remaining claims also raise novel issues of law under the New Hampshire Constitution, which this court, in its discretion, deems better resolved by the state courts.  See 28 U.S.C. § 1367(c)(1); Desjardins v. Willard, 777 F.3d 43, 46 (1st Cir. 2015) ("[N]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.  This is particularly true of interpretations of state constitutions." (citations and quotations omitted) (emphasis added)).

Significantly, the defendants never argue here that federal jurisdiction lies over the New Hampshire constitutional claims pleaded in the Amended Complaint, arguing only that "it is not clear that federal question jurisdiction no longer remains in this case."  In support of that less-than-forceful contention, they point to what they characterize as a federal question: "whether the New Hampshire Supreme Court's decision to apply a bright-line intermediate scrutiny test in State v. Guare, 167 N.H. 658, 665 (2015), is preempted under the United States Supreme Court's decisions . . . requir[ing] courts to test the

4

burden of restriction against the strength of the State's interest in the restriction in a nuanced, case-by-case basis."[2] They argue that this court may, on the basis of this question, retain jurisdiction over these actions under Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005).

Leaving aside the dubious claim that federal law could ever "preempt" the standard under which a New Hampshire Court properly scrutinizes a New Hampshire statute under the New Hampshire Constitution,[3] Grable does not appear to require, or even suggest, retaining this case. In Grable, the plaintiff's state-law-based quiet-title action required interpretation of federal tax statutes to resolve an element of his claim. See id. at 315. Thus, the Supreme Court answered in the affirmative the relevant question: whether "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without

---

[2] Defendants' Opp. at 4-5.

[3] It is one thing to say that federal law is implicated in a state-law analysis, or even that the U.S. Constitution applies a different standard or level of scrutiny to a question; it is quite another to suggest that federal law preempts state law in a state's court's consideration of claims brought solely under its own state constitution. Even if federal law is implicated here, it is thus incorrect to say that federal law "preempts" the New Hampshire Supreme Court's interpretation of the New Hampshire Constitution. The defendants cited no authority for that proposition.

disturbing any congressionally approved balance of federal and state judicial responsibilities." Id. at 314.

The answer to that question is necessarily different here, where the elements of the plaintiffs' claims implicate only New Hampshire law. Even if a defense raised a federal law question, that question would not independently confer subject-matter jurisdiction on this court. See Beneficial Nat. Bank v. Anderson, 539 U.S. 1, 6 (2003) ("As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim," even if a defense relies on federal law). Nor does it appear to this court that the "congressionally approved balance of federal and state judicial responsibilities," Grable, 545 U.S. at 314, would favor this court interpreting the New Hampshire Constitution to determine whether a New Hampshire statute violates that Constitution absent some weightier federal consideration.[4]

In truth, federal question concerns do not comprise the defendants' main objection to remand. The first two lines of their objections to the emergency remand motion describe the motion as a "ploy" that "succeeds in demonstrating the extent to

---

[4] This is not a case, such as Libertarian Party of N.H. v. Gardner, 126 F. Supp. 3d 194, 206 (D.N.H. 2015) (Barbadoro, J.), where a party has asked the court to apply the New Hampshire Supreme Court's interpretation of the New Hampshire Constitution to claims brought under the United States Constitution.

which the plaintiff is willing to manipulate the process," and the memorandum expands on the theme of forum manipulation for several pages before addressing the substantive federal question issue.

The court does not wish to suggest that forum manipulation is not a legitimate point of consideration in this case. To be sure, as the defendants point out, there is authority for the proposition that it is, see Mass. v. V & M Mgmt., Inc., 929 F.2d 830, 835-36 (1st Cir. 1991), along with comity, fairness, judicial economy, and convenience. Camelio, 137 F.3d at 672. These factors are best understood, however, not as the primary controlling considerations on a remand of state law claims, which are set forth under 28 U.S.C. § 1367(c) and analyzed above, but as "exceptional circumstances" under the last statutory factor, § 1367(c)(4).

The court addresses these "exceptional circumstance" factors, some of which cut both ways, below.

**Comity.** The most important factor to this court's thinking under the circumstances present in this case, here favors remand. "[N]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. This is particularly true of interpretations of state constitutions." Desjardins, 777 F.3d at 46 (citations and

quotations omitted) (emphasis added)).  Of course, it goes without saying that the Superior Court is more than capable of analyzing and applying any applicable federal law.

**Fairness**.  Fairness is the context for the defendants' main forum manipulation concerns.  Although the defendants have expressed some concern that the plaintiffs may resurrect their claims under the United States Constitution, the court credits the representations of the League of Women Voters's counsel, made in response to direct questioning from the court during the September 1 telephonic hearing, that plaintiffs will not do so.[5]  See supra n. 1.  The defendants also contend that it would not be fair to remand the actions for reasons relating to proceeding on an expedited schedule, arguing that "the plaintiff's forum-manipulation attempts are going to make it impossible for the State to be prepared to do anything on Wednesday, September 6, 2017, in state court except to request on an emergency basis that the case be structured for briefing and that one or more days be set aside for an evidentiary hearing."  No counsel of record in this case could advise the court if the September 6 hearing is still on the Superior Court's schedule.  If it is, that hearing date was presumably set with the defendants' input,

---

[5] The court, again, presumes that counsel for the New Hampshire Democratic Party would not undertake such action either.

8

or if not, at least with their knowledge well before the date they removed the case to this court. And while the plaintiffs may have waited a length of time to bring the suits, the defendants (who, from their memoranda, appear to believe the federal court's involvement is crucial) also waited over half of the two-week period between the beginning of the suit and the injunction hearing date to remove the case, with only 2 business days (and in fairness, an intervening holiday weekend) remaining before the hearing.

This is not to cast any aspersions on the motives of the parties and counsel. From the court's perspective, all parties and counsel are litigating in good faith to advance and protect their respective interests. While it is impossible to ignore that the parties have different preferences with respect to forum, the court draws no inferences of improper forum manipulation from any of the conduct undertaken thus far: the plaintiffs' initial choice to file these actions in state court, the defendants' lawful removal, the plaintiffs' amendments and resulting remand motions, or the defendants' objections thereto.

The point is that the fairness considerations cut both ways, and this court has every confidence that the Superior Court Clerk has administered and scheduled the proceedings fairly, will continue to do so, and that the Attorney General and Secretary of State can and will represent the State's

interests competently and effectively as they have done in this court on a very demanding schedule.

The defendants also raise substantive merits-related arguments in the context of fairness. In the absence of any remaining federal claims and the early posture of these cases, the court does not find these persuasive reasons to retain supplemental jurisdiction.[6]

**Judicial Economy.** Here, the defendants argue that "jockeying from state court to federal court and back to state court is a drain on the resources of the state judiciary, the federal judiciary, and the parties." But this factor, of course, will always discourage remand of state law claims in cases such as this involving quick post-removal nonsuits or dismissals of federal claims. It is better suited, and has more utility, in cases where the federal court has invested substantial judicial time and resources into consideration of

---

[6] While expressing no opinion on its merits, the court would be remiss not to acknowledge one potentially significant observation in the defendants' memorandum of law. Defendants point out that the pending preliminary-injunction motion mostly invokes the United States Constitution, that "the plaintiff relies heavily on either federal law or state law interpreting federal law," and that "the remaining substantive legal citations in the memorandum of law are almost exclusively federal court cases." To the extent the plaintiffs' dismissal of their federal claims will impact their ability to make a likelihood-of-success showing to satisfy their preliminary injunction burden in Superior Court, the plaintiffs will be required to live with the litigation choices they have made.

10

the state law claims or the case in general.  It has little force here, where the first half of the jockeying (here lawfully undertaken by the party opposing remand) took place only a few days ago and the court has invested relatively few resources in the case.

**Convenience**.  Here, the defendants' arguments mirror their fairness-related arguments involving the burdens of the impending Superior Court preliminary injunction hearing, addressed supra, which the court will not address again here. The defendants' only other convenience-oriented argument is that a remand order will only further delay the case.  That contention is unsupportable, given that the September 6 Superior Court hearing date (if still pending) is earlier than the hearing date it desired in this court.  Remand, if anything, resurrects the possibility of an earlier resolution of the plaintiffs' request for injunctive relief.

## CONCLUSION

Accordingly, the court GRANTS plaintiffs' motions to remand both of these actions to Hillsborough County Superior Court.[7]

---

[7] Civil no. 17-cv-395-JL doc. no. 9; civil no. 17-v-396-JL doc. no. 6.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: September 3, 2017

cc: Henry Klementowicz, Esq.
    Paul J. Twomey, Esq.
    Steven J. Dutton, Esq.
    William E. Christie, Esq.
    Anthony Galdieri, Esq.
    Anne M. Edwards, Esq.